UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:17-cv-61053

**MediBio USA, LLC**

    Plaintiff,

vs.

**Facet Technologies LLC**,
**Kevin Seifert, David Conn,**
**Alan Panzer, Donald Jackson,**
**Tae Chang Industrial Co. Ltd.,**
and **Kovac-Med Co. Ltd.**

    Defendants.

_____/

# COMPLAINT

Plaintiff MediBio USA, LLC ("Plaintiff" or "MediBio") sues Kevin Seifert, David Conn, Alan Panzer, Donald Jackson, Facet Technologies LLC, Tae Chang Industrial Co. Ltd., and Kovac-Med Co. Ltd. (collectively, "Defendants"), and alleges as follows:

## PARTIES

1. MediBio is a Florida corporation with its headquarters in Florida.

2. Facet Technologies LLC ("Facet") is a Delaware limited liability company headquartered in Atlanta, Georgia.

3. Kevin Seifert is the Chairman of Facet. Upon information and belief, Seifert is a resident of Concord, Massachusetts.

4. David Conn was the President and CEO of Facet until January 2015. Upon information and belief, Conn is a resident of Atlanta, Georgia.

5. Alan Panzer was the President and CEO of Facet from January 2015 until 2017. Upon information and belief, Panzer is a resident of Connecticut.

6. Donald Jackson is the CFO of Facet. Upon information and belief, Jackson is a resident of Atlanta, Georgia.

7. Tae Chang Industrial Co. Ltd. ("Tae Chang") is a South Korean company with its headquarters in Chung-Nam, South Korea.

8. Kovac-Med Co. Ltd. ("Kovac-Med") is a South Korean Company with its headquarters in Yeoksamdong Kangnamku, South Korea.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332, as this Court has diversity jurisdiction over the parties because the parties are domiciled in and reside in different states (or countries) and the amount in controversy exceeds $75,000, exclusive of attorneys' fees, interest, and costs.

10. Defendants are also subject to personal jurisdiction within this District because (1) Defendants have negotiated and entered into agreements in this District, (2) pursuant to Florida Statutes §§ 48.193(1)(a), (f), (g) and 48.193(2), and (3) because an agreement that is the subject matter of this action contains a consent to the personal jurisdiction of this judicial district.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c) because the agreements that are the subject matter of this action were negotiated and/or entered into in this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District. Plaintiff is domiciled in the State of Florida.

## FACTUAL ALLEGATIONS

### The Agreement Between MediBio and Tae Chang

12.     In November 2012, MediBio and Tae Chang entered into an "Exclusive Distribution Agreement", attached hereto as Exhibit A.

13.     Under the Exclusive Distribution Agreement, Tae Chang appointed MediBio as "its Exclusive distributor for the distribution, promotion and selling of the Products in the Territory."

14.     The "Products" are defined to include as Tae Chang Insulin Pen needles, Insulin Pen injectors, Insulin syringes, spinal anesthesia needles and Hypodermic Needles.

15.     The Exclusive Distribution Agreement also expressly provided that MediBio would be "entitled to appoint, at its sole discretion, subdistributors, dealers or agents for the Products within the Territory."

16.     Tae Chang also has an affirmative obligation under the Exclusive Distribution Agreement to prevent its Products from entering into the "Territory" through a third party.  Ex. A at 2.5.

17.     This exclusive relationship and access to Tae Chang is very valuable to MediBio.

### The Non-Circumvention Agreement Between MediBio and Facet

18.     After MediBio and Tae Chang entered into the Exclusive Distribution Agreement, Facet expressed an interest in being appointed as a subdistributor by MediBio.

19. Prior to appointing Facet as a subdistributor for Tae Chang products, it was essential for MediBio to protect its relationship with Tae Chang so it did not get cut out by Facet and its affiliates from any future business with Tae Chang and its affiliates.

20. Thus, MediBio and Facet entered into a separately executed agreement to protect MediBio's relationship with Tae Chang, the "Non-Circumvention Agreement", attached hereto as Exhibit B.

21. The Non-Circumvention Agreement provides that Facet, without the prior written consent of MediBio, shall not "(i) engage or conduct any business in any manner whatsoever, (ii) enter into any business relationship with or (iii) seek to pursue a business opportunity with Tae Chang…." *Id*. at 2 (a).

22. The Non-Circumvention Agreement is crucial because MediBio would only do business with Facet if Facet agreed, upon being introduced to Tae Chang, not to then circumvent MediBio and do any business with Tae Chang directly.

23. In addition, Facet agreed to cause "any of its respective officers and directors who are materially involved in any discussions regarding the subject matter hereof to agree, in writing, to be bound by the terms of this Agreement and be deemed a member of the Facet Group . . . ."

24. Facet's officers and directors who were materially involved were its Chairman, Kevin Seifert, its President and CEO until January 2015, David Conn, its President and CEO after January 2015 until very recently, Alan Panzer, and its CFO, Don Jackson.

25. Upon information and belief, Facet complied with its obligations and caused Seifert, Conn, Panzer and Jackson to agree to be individually bound by the terms of the Non-Circumvention Agreement.

**Master Alliance Agreement Between MediBio, Facet & Tae Chang**

26. Two months after the Non-Circumvention Agreement had been secured, on June 21, 2013, MediBio, Facet and Tae Chang entered into a three-way "Master Alliance Agreement." (Attached as Ex. C.)

27. Section 2.01(a)(ii) provides that "MediBio shall (A) act as Tae Chang's exclusive distributor and, pursuant to, and in accordance with, Section 2.01(a)(iii), shall designate Facet as its designee to market, promote and sell the Products."  Section 20.1(a)(iii) then provides that "Tae Chang hereby appoints MediBio, and in turn MediBio hereby appoints Facet, each of which hereby acknowledges and accepts such appointment, as (A) the exclusive distributor for the distribution, promotion and selling of the Products listed on Schedule I…"

28. Section 2.01(b) states that without the prior consent of the other Parties, no Party (and each party shall cause its subsidiary and affiliates not to), "use, license, grant any covenant, right or benefit with respect to or otherwise exploit any Exclusive Products other than in connection with the Projects…"

29. Section 2.01(d), entitled "Business Dealings Between the Parties," states that "without the prior written consent of MediBio, Tae Chang and Facet and their respective Subsidiaries and Affiliates shall be prohibited from, directly or indirectly, engaging in any business relationship or conducting any business…", and that "the Non-Circumvention Agreements are, and shall remain, in full force and effect pursuant to, and

in accordance with their terms.  The Non-Circumvention Agreements were material to the Parties decision to enter into this Agreement."

30.  In addition, the Master Alliance Agreement also provided MediBio with the "right to review the books and records of each other Party regarding all transactions relating to any Project" pursuant to Section 3.04 (a) of the Master Alliance Agreement.

31.  MediBio also has the right to prior notice of, and to attend as an observer, any meeting "between Representatives of Tae Facet and Representatives of Tae Chang in furtherance of the matters described in this Agreement…" (Master Alliance Agreement at 3.04 (b).)

32.  Article V of the Master Alliance Agreement provided for the protection of intellectual property of each of the parties.

### Project Agreement No. 1 (Pen Needles)

33.  Facet, Tae Chang, and MediBio also entered into a "Project Agreement" with respect to a specific product, pen needles, which contains an exclusivity provision that "Facet hereby agrees to purchase the Products exclusively from MediBio."  (Project Agreement at Section 1.03 (b)(ii), attached as Ex. D.)

34.  Schedule 2 of the Project Agreement set forth the prices that Facet was to pay to Tae Chang and to MediBio for the Products.

35.  Schedule 3 required that Facet purchase from Tae Chang an annual minimum amount of the Product as follows:

| Year | Minimum Annual Purchases |
| --- | --- |
| 2 | $4,000,000 |
| 3. | $5,000,000 |

| | |
|---|---|
| 4 | $6,000,000 |
| 5 | $7,000,000 |
| 6 and after | $8,000,000 |

36.     Schedule 1.06(g) requires Facet to provide MediBio with a summary of material terms of each contract it entered with its customers, including prices to be paid and quantity orders, provide reports for sales made at the end of each month, a schedule of inventory each quarter, and make available to MediBio "any information necessary to reconciles the information required … or amounts owed" to MediBio.

### The Breaching Conduct

37.     Despite MediBio bringing Facet into this very profitable business, Facet has breached the applicable agreements in numerous ways.

38.     First, Facet has failed to meet the Minimum Annual Purchase requirements of the Project Agreement, has failed and refused to pay MediBio the minimum amounts owed pursuant to the Project Agreement, and has refused to provide MediBio with the sales information to which it is entitled under Section 1.06(g) of the Project Agreement.

39.     Second, Facet and Tae Chang began to meet with each other to explore a new business relationship to the exclusion of MediBio, in violation of Section 3.04 (b) of the Master Alliance Agreement.  Thereafter, Facet and Tae Chang have both violated the non-circumvention clauses in the Non-Circumvention Agreement and in the Master Alliance Agreement.

40.     For example, Facet has purchased at least 8 Lancet Automation Machines, with a value of at least $4 million, directly from Tae Chang without providing MediBio

-7-

with any notice, without obtaining the prior written permission from MediBio, and without including MediBio in the business.

41. Facet also circumvented MediBio by going directly to Tae Chang to obtain credit, effectively cutting MediBio out from participating in a deal that would be beneficial for MediBio.

42. These Lancet Automation Machines are used to produce lancets efficiently that are of high quality, and Facet's main business is in selling lancets, so these Lancet Automation Machines are extremely valuable to Facet. To produce lancets, one needs to purchase a supply of cannula, and Tae Chang, with its affiliate Kovac-Med, is one of the world's largest suppliers of cannula.

43. Facet is now purchasing large supplies of cannula from Tae Chang and its affiliate Kovac-Med, and using the Lancet Automation Machines it purchased from Tae Chang to produce lancets, which it then sells at great profit. Thus, Facet and Tae Chang are profiting greatly from the cannula and lancet businesses without providing MediBio with its share of those businesses.

44. When caught, Tae Chang paid MediBio $118,000 which it represented was a 3% commission on its sales of cannula to Facet as of July or August 2016. Neither Tae Chang nor Facet has been willing to provide audited numbers showing the volume of sales, nor justify such a low commission rate. Since July or August 2016, Tae Chang and Facet have continued with their cannula business without any accounting for or payments to MediBio.

45.     Facet and Tae Chang have begun routing the cannula business through an affiliate of Tae Chang, defendant Kovac-Med, in an attempt to avoid further liability towards MediBio.

46.     In addition, Tae Chang and Facet developed a third business together without MediBio.  In this third business, Facet and Tae Chang brought in Johnson & Johnson.  Originally, Mr. Seifert suggested to Jatin Rajani of MediBio that it would be a possibility for the companies to do business with Johnson & Johnson related to Calibra syringes.  MediBio participated in an initial telephone call with Johnson & Johnson and Facet.  However, rather than including MediBio, Facet then brought the Johnson & Johnson business directly to Tae Chang to the explicit exclusion of MediBio.  In fact, Facet and Tae Chang went so far as to aggressively exclude Mr. Rajani from meetings while Mr. Rajani was in South Korea intending to attend the meetings.

47.     The business, excluding MediBio, started with Tae Chang designing and testing and making prototypes for Calibra syringes.  When successful, Johnson & Johnson then paid for the building, design, and installation of full assembly machinery for the Calibra syringes at Tae Chang's facility.  Tae Chang is now producing these Calibra syringes that it is selling to Facet either directly or through Johnson & Johnson or their respective affiliates.

48.     All conditions precedent to bringing this action, including notice conditions, have been met.  Specifically, MediBio provided the requisite notice of its claims to Tae Chang and Facet in advance of filing this action.  Subsequent to the notice, the principles of the Parties met and negotiated regarding the issues, but no resolution could be reached.

## COUNT I
## BREACH OF NON-CIRCUMVENTION AGREEMENT
(against all Defendants)

49.     Paragraphs 1 through 48 are hereby incorporated by reference.

50.     The Non-Circumvention Agreement provides that Facet, Seifert, Conn, Panzer and Jackson, without the prior written consent of MediBio, shall not "(i) engage or conduct any business in any manner whatsoever, (ii) enter into any business relationship with or (iii) seek to pursue a business opportunity with Tae Chang…." *Id*. at 2 (a).

51.     However, in direct contravention of the Non-Circumvention Agreement, and without providing the requisite written notice or obtaining the requisite written consent of MediBio, Facet, led by Seifert, Conn, Panzer and Jackson, created at least three new business relationships with Tae Chang, and began purchasing products directly from Tae Chang as described in paragraphs 37 through 47 above.

52.     Further, Facet and Tae Chang, together with the individual defendants, attempted to avoid liability under the Non-Circumvention Agreement by running certain business dealings through Tae Chang's affiliate, Kovac-Med.

53.     As a result of these breaches, MediBio suffered monetary damages and profits when MediBio was circumvented.

WHEREFORE, Plaintiff demands judgment in its favor for: (a) actual damages, (b) interest, (c) court costs; and (d) any and all further relief that is proper and just.

## COUNT II
## BREACH OF MASTER ALLIANCE AGREEMENT AND
## PROJECT AGREEMENT
(against all Defendants)

54. Paragraphs 1 through 48 are hereby incorporated by reference.

55. The Master Alliance Agreement includes a clause under Section 2.01, "Strategic Alliance; Collaboration"; which states that "without the prior written consent of MediBio, Tae Chang and Facet and their respective Subsidiaries and Affiliates shall be prohibited from, directly or indirectly, engaging in any business relationship or conducting any business…"

56. Further, Facet and Tae Chang, together with the individual defendants, attempted to avoid liability under the agreements by running certain business dealings through Tae Chang's affiliate, Kovac-Med.

57. However, in direct contravention of the Master Alliance Agreement and the Project Agreement, and without providing the requisite written notice or obtaining the requisite written consent of MediBio, Facet, led by Seifert, Conn, Panzer and Jackson, created at least the three new business relationships with Tae Chang, and began purchasing products directly from Tae Chang, as described in paragraphs 37 through 47 above.

58. As a result of the Defendants' breaches, MediBio has suffered damages of lost business, lost sales, lost commissions, and lost profits.

WHEREFORE, Plaintiff demands judgment in its favor for: (a) actual damages, (b) interest, (c) court costs; and (d) any and all further relief that is proper and just.

## COUNT III
## BREACH OF EXCLUSIVE DISTRIBUTION AGREEMENT
(against Tae Chang)

59. Paragraphs 1 through 48 are hereby incorporated by reference.

60. In 2012, MediBio and Tae Chang entered into an "Exclusive Distribution Agreement".

61. In breach of the Exclusive Distribution Agreement, Tae Chang sold Products directly to Facet, which is located in MediBio's exclusive territory of the United States.

62. As a result of Tae Chang's breach, MediBio has suffered damages of lost sales and profits.

WHEREFORE, Plaintiff demands judgment in its favor for: (a) actual damages, (b) interest, (c) court costs; and (d) any and all further relief that is proper and just.

## COUNT IV
## INJUNCTION
(against all Defendants)

63. Paragraphs 1 through 48 are hereby incorporated by reference.

64. The Master Alliance Agreement includes a clause under Section 2.01, "Strategic Alliance; Collaboration", which states that "without the prior written consent of MediBio, Tae Chang and Facet and their respective Subsidiaries and Affiliates shall be prohibited from, directly or indirectly, engaging in any business relationship or conducting any business…"

65. Further, the Master Alliance Agreement states, "The Parties hereby represent and warrant that the Non-Circumvention Agreements are, and shall remain, in full force and effect pursuant to, and in accordance with their terms.  The Non-

Circumvention Agreements were material to the Parties decision to enter into this Agreement."

66. The Non-Circumvention Agreement provides that Facet, without the prior written consent of MediBio, shall not "(i) engage or conduct any business in any manner whatsoever, (ii) enter into any business relationship with or (iii) seek to pursue a business opportunity with Tae Chang…." *Id*. at 2 (a).

67. However, in direct contravention of both the Non-Circumvention Agreement and the Master Alliance Agreement, and without providing the requisite written notice or obtaining the requisite written consent of MediBio, Facet, led by Seifert, Conn, Panzer and Jackson, created at least three new business relationships with Tae Chang, and began purchasing products directly from Tae Chang, as described above.

68. Further, Facet and Tae Chang, together with the individual defendants, attempted to avoid liability under the agreements by running certain business dealings through Tae Chang's affiliate, Kovac-Med.

69. The Master Alliance Agreement recognizes that in the event of a breach such as the instant dispute, monetary damages may be inadequate.

70. Specifically, Section 10.18 of the Master Alliance Agreement, titled Equitable Relief, states:

> The Parties acknowledge and agree that the remedies at law for violation of this Agreement may cause irreparable injury to the non-breaching Parties, and the non-breaching Parties shall be entitled to preliminary injunctive relief and other injunctive relief against such violation or threatened violation without the necessity of proving actual damages. Such injunctive relief will be in addition to and not in limitation of any and all remedies such non-breaching Parties have in law or in equity for the enforcement of this Agreement.

71.     Indeed, as anticipated by the Master Alliance Agreement, Tae Chang and Facet's continual breach of the non-circumvention clauses causes irreparable harm to MediBio in the loss of its exclusive arrangements with Tae Chang and Facet. Monetary damages alone will not remedy the loss of the exclusivity arrangement to which MediBio is entitled.

72.     This irreparable harm can only be remedied by an injunction enjoining Tae Chang from selling Products directly to Facet or through its affiliates, and enjoining Facet from buying Products directly from Tae Chang or through tis affiliates, and from further meetings and business relationships which exclude MediBio, and from operating the Lancet Automation Machines that were built, designed, and implemented without MediBio.

73.     Such an injunction would be in the public interest because exclusivity and non-circumvention clauses are contractual provisions which facilitate parties entering into distributor relationships without concern over being cut out, and thus there is a public policy interest in enforcing such provisions.

WHEREFORE, Plaintiff demands judgment in its favor for: (a) injunctive relief, enjoining the Defendants from further violation of the Master Alliance Agreement, the Exclusive Distributor Agreement, the Project Agreement, and the Non-Circumvention Agreement, (b) interest, (c) court costs; and (d) any and all further relief that is proper and just.

## COUNT V
## ACCOUNTING/INSPECTION OF BOOKS & RECORDS
(against Facet and Tae Chang)

74.     Paragraphs 1 through 48 are hereby incorporated by reference.

75. MediBio has the "right to review the books and records of each other Party regarding all transactions relating to any Project" pursuant to Section 3.04 of the Master Alliance Agreement.

76. On multiple occasions, MediBio exercised this right, specifically demanding pen needle sales and information, purchases, Calibra sales and information, and cannula sales and information from Facet.

77. However, in breach of Section 3.04 (a) of the Master Alliance Agreement Facet and Tae Chang refused to provide the requested information.

78. For instance, on July 12, 2016, Dr. Parker of MediBio emailed Facet to follow up regarding requested data certified by their CFO. In response, Tony Mulone, then of Facet, wrote, "I met with them today to pull info. I will push." Yet, despite Mr. Mulone's acknowledgement that the certified data was owed, Facet never provided the certified data.

79. On November 25, 2016, in response to a MediBio request, Facet provided some information was provided that was insufficient, inadequate, incomplete, and uncertified. Since then, many requests for follow-up and updated information have been refused.

WHEREFORE, Plaintiff demands judgment in their favor for an accounting pursuant to Section 3.04 (a) court costs, and any other relief that is proper or just.

### COUNT VI
### BREACH OF MASTER ALLIANCE AGREEMENT- EXCLUSION FROM MEETINGS
(against Facet and Tae Chang)

80. Paragraphs 1 through 48 are hereby incorporated by reference.

81. MediBio has the right to prior notice of, and to attend as an observer, any meeting "between Representatives of Tae Facet and Representatives of Tae Chang in furtherance of the matters described in this Agreement…" Master Alliance Agreement at 3.04 (b).

82. Tae Chang and Facet have violated this right on many occasions, as part of their other breaches of agreements, in order to improperly circumvent and shut out MediBio of their business.

83. Most egregiously, Facet and Tae Chang aggressively exclude Mr. Rajani, a representative of MediBio, from meetings with Johnson & Johnson while Mr. Rajani was in South Korea intending to attend the meetings.

84. As a result of the Defendants' breaches and exclusion of MediBio from meetings and the conduction of new business, MediBio has suffered damages of lost business, lost sales, lost commissions, and lost profits.

WHEREFORE, Plaintiff demands judgment in its favor for: (a) actual damages, (b) interest, (c) court costs; and (d) any and all further relief that is proper and just.

## COUNT VII
## BREACH OF PROJECT AGREEMENT QUOTAS
(against Facet)

85. Paragraphs 1 through 48 are hereby incorporated by reference.

86. The Project Agreement specified a minimum amount of Products that Facet was obligated to purchase through MediBio in Section 1.06 (f) of the Project Agreement and Schedule 3 of the Project Agreement.

87.     Schedule 3 set out the minimum quantities, which were $4,000,000 in aggregate purchases in Year 2, $5,000,000 in Year 3, $6,000,000 in Year 4, $7,000,000 in Year 5, and $8,000,000 in Year 6 and thereafter.

88.     Facet breached the minimum purchase requirements in each year of the contract.

89.     As a result, MediBio suffered monetary damages in the amount of lost profits due to lost sales.

WHEREFORE, Plaintiff demands judgment in its favor for: (a) actual damages, (b) interest, (c) court costs; and (d) any and all further relief that is proper and just.

## COUNT VIII
## THEFT OF MEDIBIO INTELLECTUAL PROPERTY
## IN BREACH OF MASTER ALLIANCE AGREEMENT
(against Facet)

90.     Paragraphs 1 through 48 are hereby incorporated by reference.

91.     The Master Alliance Agreement defines "Intellectual Property" or "IP" to include "Marks" and defines "Marks" to mean all "trademarks, service marks, trade names, trade dress, logos…and all other source or business identifier, together with the goodwill associated…and all applications, registrations, renewals, and extensions…."

92.     The Master Alliance Agreement defines "MediBio Background IP" as "all Intellectual Property and Technology (a) Controlled by MediBio or any of its Affiliates as of the Effective Date or (b) first Controlled by MediBio or any of its affiliates (i) after the Effective Date and (ii) not created, developed, conceived, or acquired by, or licensed to, MediBio or any of its Affiliates under this Agreement or any Project Agreement or in the course of performing or otherwise resulting from, any activities under this Agreement or any Project Agreement."

-17-

93. The Master Alliance Agreement defines "MediBio IP Improvement" to mean "any Improvement to any MediBio Background IP (a) created developed or conceived by or for MediBio or any of its Affiliates on or after the Effective Date…(b) created, developed or conceived by or for Facet or Tae Chang or any of their Affiliates or (c) created, developed or conceived jointly by or for MediBio or any of its Affiliates, on the one hand, and Facet or Tae Chang or any of their Affiliates, on the other hand."

94. Prior to the Effective Date, MediBio had invested substantially in developing trademarks, trade names, trade dress, and logos for three new brands, Carefine, Quinta Point and Maxflow, for the sale of Pen Needles.

95. The investment consisted of both money spent and time invested by MediBio's officers and employees.

96. Pursuant to the Master Alliance Agreement, the aforementioned intellectual property is "MediBio Background IP", "MediBio IP Improvement" and "MediBio Licensed IP" that Facet had a license to use for the purposes of the alliance. (*Id*. at Section 5.01.)

97. The Master Alliance Agreement makes clear that MediBio retains its "all right, title and interest in and to all MediBio Background IP and MediBio IP Improvements, subject to the licenses granted…to the other Parties…". (*Id*. at 5.01 (b).)

98. Rather that appropriately using MediBio's trademarks, trade names, trade dress, and logos for Carefine, Quinta Point and Maxflow as a licensee, however, Facet – in breach of the Master Alliance Agreement – registered the MediBio's trademarks, trade names, trade dress, and logos for Carefine, Quinta Point and Maxflow as its own

intellectual property both with the United States Patent and Trademark Office and internationally.

99. As part of the United States Patent and Trademark Office registration application, Facet falsely claimed that it had developed the intellectual property, even though MediBio was in fact the one that did so.

100. The Master Alliance Agreement recognizes that in the event of a breach such as the instant dispute, monetary damages are inadequate and an injunction is appropriate.

101. Specifically, Section 10.18 of the Master Alliance Agreement, titled Equitable Relief, states:

> The Parties acknowledge and agree that the … non-breaching Parties shall be entitled to preliminary injunctive relief and other injunctive relief against such violation or threatened violation without the necessity of proving actual damages. Such injunctive relief will be in addition to and not in limitation of any and all remedies such non-breaching Parties have in law or in equity for the enforcement of this Agreement.

WHEREFORE, Plaintiff demands judgment in its favor ordering that Facet: (a) be enjoined from claiming ownership over the trademarks, trade names, trade dress, and logos for Carefine, Quinta Point and Maxflow, (b) assign ownership of the trademarks and tradenames for Carefine, Quinta Point and Maxflow to MediBio, (c) pay MediBio's attorneys fees and costs; and (d) granting all further relief that is proper and just.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand trial by jury of all issues.

Dated May 26, 2017

                                        By:   /s/ *Jeffrey W. Gutchess*
                                               **AXS Law Group**
                                               *Attorneys for the Plaintiffs*
                                               2121 NW 2nd Avenue
                                               Wynwood, Florida 33127
                                               Telephone:  (305) 389-3646
                                               **Jeffrey W. Gutchess**
                                               Florida Bar No. 702641
                                               jeff@axslawgroup.com
                                               **Daniel Tropin**
                                               Florida Bar No. 100424
                                               dan@axslawgroup.com